# Town of New Castle *v.* Grubbs.

[No. 21,025. Filed December 18, 1908.]

1. APPEAL.— *Complaint.*— *Objections to.*— *Specificness.*— *Towns.*—
*Failure to Provide Barriers Along Sidewalk.*—An assignment, on
appeal, that plaintiff's complaint alleging defendant town's negli-
gence in failing to provide a barrier along its sidewalk at a
dangerous place, did not state facts showing a duty to provide
such barrier, and that such duty cannot be left to mere inference
or conjecture, is too general to present any question. p. 488.

2. PLEADING.—*Complaint.*—*Allegations.*—*Inferences.*—A complaint
must be read in the light of all facts necessarily inferred from
the facts well pleaded, matters of substance being frequently
shown by the narration of an event. p. 489.

3. SAME.—*Complaint.*—*Municipal Corporations.*—*Dangerous Side-
walks.*—*Necessity for Guards.*—A complaint alleging that defend-
ant town maintained a sidewalk alongside of a lot which lay from
four to ten feet beneath the level of such sidewalk, and that in
some places the descent from the sidewalk was perpendicular,
shows a necessity for the town's guarding of such sidewalks by
barriers or otherwise. p. 490.

4. MUNICIPAL CORPORATIONS.—*Dangerous Excavations Near Side-
walk.*—*Nuisance.*—The maintenance, by a town, of an excavation
beside a sidewalk, wherein a traveler may fall, constitutes a
public nuisance. p. 490.

5. SAME.—*Dangers Near Sidewalks.*—*Duties.*—Municipal corpora-
tions are liable for excavations made by private parties upon their

own premises only where such excavations can be reasonably considered as endangering persons traveling upon the streets or sidewalks.  p. 490.

6. MUNICIPAL CORPORATIONS.—*Streets.*—*Keeping Safe.*—It is the duty of municipal corporations to use ordinary care to keep their streets in a safe condition; and this duty extends to providing against dangers contiguous to such streets.  p. 492.

7. PLEADING.— *Complaint.*— *Municipal Corporations.*— *Dangerous Sidewalks.*— *Negativing Contributory Negligence.*— A complaint alleging that plaintiff's injuries were caused "without any fault or negligence on his part," and "wholly by the fault and negligence of defendant in failing to place any railing, guard, fence or barrier along" the dangerous sidewalk, shows that plaintiff was not guilty of contributory negligence, and that the injury was not caused by the negligence of a third person.  p. 492. .

8. SAME.—*Complaint.*—*Towns.*—*Dangerous Sidewalk.*—*Concurring Negligence.*—*Proximate Cause.*—*Estoppel.*—Where a complaint alleges that plaintiff's injuries were caused solely by defendant town's failure to place a guard along its dangerous sidewalk, such town is estopped from showing that a defect in the street, for which it was responsible, was also a proximate cause of such injuries.  p. 493.

9. SAME.— *Complaint.*— *Clear Statement.*— Where a complaint plainly states the facts creating a liability, it is sufficient.  p. 493.

10. MUNICIPAL CORPORATIONS.—*Liability for Defective Public Ways.* —Towns and cities are liable for negligence in the maintenance of their public ways.  p. 493.

11. SAME.—*Dangerous Sidewalks.*—*Guards.*—*Necessity for.*—*Question for Jury.*—Whether a guard was needed at a point where there was a perpendicular descent from the sidewalk is ordinarily a question for the jury.  pp. 494, 501.

12. TRIAL.—*Interrogatories to Jury.*—*Municipal Corporations.*— *Dangerous Sidewalks.*—Answers to interrogatories showing that the plaintiff stumbled over a projection in the sidewalk and fell into a depression near the sidewalk, while passing a woman in the dark, that there was some light from street lights and from the stores and houses near by, but none from the street light at the crossing which plaintiff was approaching, do not overcome a general verdict that the town's failure to place a guard at such point was the proximate cause of plaintiff's injuries.  p. 494.

13. SAME.—*Interrogatories to Jury.*—*Notice.*—It is improper to submit to a jury an interrogatory asking whether the officers of a town had notice of a dangerous sidewalk, such question being one of mixed law and fact.  p. 494.

14. SAME.—*Interrogatories to Jury.*—*Dangerous Sidewalks.*—*Continued Use Without Accident.*—An answer to an interrogatory to

the jury, showing that the public had used the alleged defective sidewalk a long time without accident, does not overthrow a general verdict for plaintiff that the town was guilty of negligence therein.   p. 495.

15.   TRIAL.—*Interrogatories to Jury.*—*Towns.*—*Defective Sidewalks.* — *Notice.*— *Contributory Negligence.*— *Question for Jury.*— Answers to interrogatories to the jury showing that plaintiff in the night went along a dark sidewalk knowing of a depression along the side thereof, that in attempting to pass a woman he stepped two or three feet off the side of the way, stumbled and fell into such depression, sustaining injuries, do not control a general verdict for plaintiff, the question of contributory negligence being for the jury.   p. 495.

16.   SAME.—*Interrogatories to Jury.*—*Conflict.*—Conflicting answers to interrogatories to the jury nullify one another.   p. 496.

17.   NEGLIGENCE.—*Contributory.*—*Dangerous Sidewalks.*—*Notice.*— *Question for Jury.*—A traveler in walking along a known dangerous sidewalk and receiving injuries thereby is not guilty of contributory negligence as a matter of law, such question being for the jury.   p. 496.

18.   TRIAL.—*Burden of Proof.*—*Contributory Negligence.*—*Presumptions.*—The burden of proving contributory negligence is on defendant, and where the record is silent on the question, no presumption of such negligence arises.   p. 498.

19.   MUNICIPAL CORPORATIONS.—*Dangerous Sidewalks.*—*Guards.*— *Accidents of Travel.*—*Question for Jury.*—It is the duty of a town to guard a dangerous sidewalk, so as to prevent ordinary accidents of travel, and whether a traveler using such sidewalk, with knowledge thereof, is guilty of contributory negligence is ordinarily a question for the jury.   p. 498.

20.   TRIAL.—*Instructions.*—*Contributory Negligence.*—*Slight Want of Care.*—An instruction, in a personal injury case, denying a right of recovery if any want of care or neglect by plaintiff contributed to his injury, was properly refused, since a slight want of care might not fall below the standard.   p. 498.

21.   SAME.—*Instructions.*—*Duplication of.*—It is not erroneous to refuse to give instructions which are substantially covered by those given.   p. 498.

22.   SAME.—*Instructions.*—*Duty to Look.*—*Dangerous Sidewalks.*— An instruction, in a personal injury case, that it was plaintiff's duty to use his vision and every reasonable means of observation to ascertain the known defects in the sidewalk, but failing to describe the defects causing him to stumble, was properly refused.   p. 499.

23.   SAME.—*Instructions.*—*Harmless.*—*Interrogatories.*—Answers to interrogatories to the jury may render harmless the court's refusal to give a tendered instruction.   p. 499.

24.  TRIAL.—*Instructions.—Invading Province of Jury.*—Instructions invading the province of the jury should be refused.  p. 499.

25.  SAME.—*Instructions.—Negligence.*—An instruction that plaintiff "took the risk upon himself" in passing over a known defective sidewalk was properly refused, where it failed to show that plaintiff's injuries were caused thereby.  p. 499.

26.  NEGLIGENCE.—*Proximate Cause.—Question for Jury.*—What is the proximate cause of an injury is usually a question for the jury.  p. 499.

27.  TRIAL.—*Instructions.—Precision.*—The court should refuse to give a tendered instruction unless its terms are precisely correct.  p. 500.

28.  SAME.—*Instructions.—Duty of City to Keep Streets and Sidewalks Safe.*—An instruction, in a personal injury case, that it was the duty of the defendant town to keep its streets and sidewalks in a reasonably safe condition, is not misleading, where another instruction said that its duty was to exercise ordinary care therein.  p. 500.

29.  SAME.—*Instructions.—Invited Error.*—Appellant is estopped to complain of an alleged erroneous instruction, where it asked one in substantially the same language.  p. 500.

30.  MUNICIPAL CORPORATIONS.—*Dangerous Sidewalks.—Notice.*—Where a low and unguarded lot has existed along the side of a sidewalk for many weeks, notice thereof, to the town, may be assumed.  p. 501.

31.  TRIAL.—*Instructions.—Dangerous Sidewalks.—Notice.*—An instruction that defendant town, to be liable, must be shown to have had notice of the dangerous sidewalk causing the injuries, is erroneous, since the existence of such condition for a sufficient length of time for the town officials to know thereof charges such town with notice.  p. 502.

32.  EVIDENCE.—*Objections.—Striking Out.—Reintroducing Without Objection.*—Where certain evidence was objected to, the objection overruled, and an exception saved, and the court afterward struck out such evidence, its introduction at a subsequent time without objection furnishes no just cause of complaint.  p. 502.

33.  SAME.—*Condition of Low Lot Adjoining Sidewalk.*—In an action by a traveler against a town for injuries received by falling from an unguarded sidewalk into a low lot adjoining thereto, evidence that a bill-board had stood on the front of such lot some time before the injuries were received, is harmless.  p. 503.

34.  SAME.—*Earnings.—Damages.—Towns.—Dangerous Sidewalks.*—In an action for damages sustained because of a dangerous sidewalk, evidence of plaintiff's earnings at the time of the injury is admissible.  p. 503.

From Delaware Circuit Court; *Joseph G. Leffler,* Judge.

Action by Claude Grubbs against the Town of New Castle. From a judgment on a verdict for plaintiff for $7,500, defendant appeals. *Affirmed.*

*E. H. Bundy* and *Forkner & Forkner,* for appellant.

*James Bingham, Jesse R. Long, William O. Barnard, William E. Jeffrey* and *George M. Barnard,* for appellee.

GILLETT, J.—Action by appellee to recover for personal injuries sustained by him owing to the alleged negligence of appellant in failing to maintain a barrier between a sidewalk and an adjoining low lot. There was an amended complaint in two paragraphs filed, to each of which paragraphs a demurrer for want of facts was overruled. It is contended that the demurrer should have been sustained for the reasons: (1) That, to constitute a good complaint for want of a barrier, facts must be stated showing a duty to construct the same, and that this must not be left to inference or conjecture; (2) that the complaint does not aver how low the lot was immediately adjoining the walk, so as to show that a barrier was required; (3) that the complaint does not show a causal connection between the injury and the want of a barrier, in that it is not shown that appellee's fall off the walk was attributable to the want of a barrier, or that he would have been protected from falling had a barrier been maintained.

It is admitted that both paragraphs of the amended complaint are the same, except that the second contains a direct averment of knowledge on the part of the town. We may therefore summarize the material averments of fact of the first paragraph as a proper preliminary to the consideration of said objections. After alleging the corporate character of appellant on, and for a long time prior to, March 4, 1905, said paragraph alleges that one of the principal streets of the town, where the injuries were sustained, was Broad street, running east and west through said town, and traversing the main business portion thereof, which said street and the side-

walk thereon were on said day extensively used by the public for travel; that on the north side of said street, between Twelfth and Thirteenth streets, there was on said day, and had been for a long time prior thereto, a vacant lot, abutting upon said Broad street; that adjoining said lot on the west there was a large brick building, three stories high, known as the "K. of P. block," and adjoining said lot on the east there was situated a large brick building, three stories high, known as the "Ward block," and immediately south of said lot, and extending across the same, there was on said day, and for a long time prior thereto, a stone sidewalk; that some of the stones were rough and uneven upon the surface, and in laying and placing said stones the defendant so laid and placed the same that they settled down and some of them projected above, and were higher than the others; that said walk, by reason of the rough and uneven surfaces and projections as aforesaid, was rendered unsafe and dangerous to the public that traveled thereon; that said lot naturally, and by reason of excavations made therein, was on said day, and for a long time prior thereto had been, much lower than the surface of the sidewalk, being in some places from three to five feet lower, and in others from eight to ten feet lower than the sidewalk, and that said low and excavated condition of said lot extended up to, and in some places under, the north side of said sidewalk, thereby making an abrupt and perpendicular descent from the surface of said walk to the surface of said lot; that all of said conditions herein described with reference to said lot, the location and condition of said walk, and the location of said buildings in relation thereto, existed on said day, and had continuously existed for a period of two years prior thereto; that, by reason of said high buildings adjoining said lot, said sidewalk was rendered very dark in the night-time, and that said sidewalk, without any guard, fence, railing or barriers separating it from said lot, was rendered unsafe and dangerous for persons traveling and walking thereon (then

follows an averment of negligence in respect to the failure to maintain a guard or barrier) ; that about 9 o'clock p. m. of said day said plaintiff, while walking upon said sidewalk, when it was very dark, and while in the exercise of due care, struck his foot against a projection in said sidewalk, or upon the uneven surface thereof, and, without any fault or negligence on his part, stumbled and fell from, over and off said sidewalk and into the hole and excavation aforesaid in said lot, a distance of ten feet, alighting and striking upon his head; that said injuries were caused wholly by the fault and negilgence of the defendant in failing to place any railing, guard, fence or barrier along the north side of said sidewalk as aforesaid, to his damage, etc.

Appellant's first point is too general to require us to consider whether the complaint is lacking in a showing concerning the existence of any particular fact necessary to create the duty to construct the barrier. The existence of a duty upon the part of the town might depend upon a number of facts, and it is not fair to this court, or to opposite counsel, that what is really mere general assertion should be accepted as a reason. *Pittsburgh, etc., R. Co.* v. *Lightheiser* (1907), 168 Ind. 438; *American Food Co.* v. *Halstead* (1905), 165 Ind. 633; *Liggett* v. *Firestone* (1885), 102 Ind. 514. If we were to reverse this case upon some ground not specified, we should have no assurance that we had done so upon a ground that was in the mind of objecting counsel. Our inference from the citations in support of the point is that it is claimed that the want of a barrier is not shown to have been a proximate cause of the injury, and that the relation of the lack of a barrier to the injury cannot be shown by inference. With this explanation we shall proceed to consider the objections.

It is true that the complaint does not predicate negligence upon the unevenness of, or the projections in, the sidewalk, nor does it allege that appellee stumbled upon one of the projections theretofore referred to in the complaint as mak-

ing the sidewalk dangerous. The complaint does, however, allege that by reason of the adjoining high buildings the sidewalk was rendered very dark in the night-time, and that without any guard or barrier separating it from said lot it was rendered unsafe and dangerous for persons traveling thereon. It is further alleged that the low and excavated condition of the lot, theretofore more particularly described, extended up to, and in some places under the sidewalk, thereby making an abrupt and perpendicular descent from the surface of the sidewalk down to the surface of said lot. There is an averment of a negligent failure to keep the sidewalk in a safe condition for public travel by the erection of a guard or barrier, and it is shown that the plaintiff, while it was very dark, was walking upon said sidewalk, and, while in the exercise of due care, struck his foot against a projection, in the sidewalk or upon the uneven surface thereof, and without any fault or negligence on his part stumbled and fell from, over and off said sidewalk and into the hole or excavation aforesaid, a distance of ten feet, alighting upon his head, neck and shoulders, and that his injuries were caused solely by the negligence of the town in failing to place a guard, railing or barrier along the north side of the sidewalk.

We are of opinion that the complaint is not open to the objections indicated. The pleading is to be read in the light of all such ultimate facts as must necessarily be 2. intended from the facts which are well pleaded. A complaint ought to be fairly construed, and it is often the fact that matters of substance are shown by the very narrative of the manner in which an occurrence took place. See §385 Burns 1908, §376 R. S. 1881; *Indiana, etc., Torpedo Co.* v. *Lippincott Glass Co.* (1905), 165 Ind. 361; *Pennsylvania Co.* v. *Sears* (1894), 136 Ind. 460; *Wabash R. Co.* v. *Schultz* (1903), 30 Ind. App. 495; 4 Ency. Pl. and Pr., 745.

It fairly appears, in our opinion, that a guard was needed to render the sidewalk ordinarily safe, and that it was because of the lack thereof that appellee received his injuries.

Relative to the danger which conditions like the one described subject the public to, we may say that the maintenance of an excavation beside a sidewalk, whereby a traveler thereon may, by a misstep, fall into a hole, has been held to be a public nuisance. *State* v. *Society, etc.* (1880), 42 N. J. L. 504; *Barnes* v. *Ward* (1850), 9 C. B. *392; Webb's Pollock, Torts, 634. Of course, the municipality is not responsible for what private owners do upon their own premises, and it is not in general bound to guard travelers against wandering onto adjoining grounds along the highway, but if the fact be that by reason of the condition of the adjoining premises the way itself is rendered substantially unsafe, and the public authorities may reasonably protect travelers from the danger, then it is their duty so to do. This court said in *Higert* v. *City of Greencastle* (1873), 43 Ind. 574, 600: "It is abundantly established by the authorities heretofore cited, that if there are dangerous pits, excavations, precipices, walls, stones, or other obstructions, situated without the limits of the located highway or traveled track, but so near to it and so situated that they would, without barriers or guards, endanger the safety of passengers using the traveled or made part of the road, with ordinary care and diligence to avoid exposure to injury, it is the duty of the city or town to guard against such defects or obstructions by means of a railing, or in some other proper mode."

In *City of Aurora* v. *Colshire* (1877), 55 Ind. 484, the city was held liable for failing to construct a railing or guard, where it had graded up a street so as to make one side of the fill a stone wall which private owners had constructed upon their own property, the fact being that the plaintiff

had fallen from the elevation while passing along the street in the night-time.

It was said by Elliott, J., in *City of Delphi* v. *Lowery* (1881), 74 Ind. 520, 39 Am. Rep. 98: ''The duty resting upon the municipality is not fully discharged by making the traveled part of the highway safe, and such measures as ordinary prudence requires must be taken to prevent persons, using ordinary care, from falling into dangers placed along the sides, or in close proximity to the termination, of the highway of the municipality.''

In *Alger* v. *City of Lowell* (1862), 3 Allen (Mass.) 402, Hoar, J., speaking for the Massachusetts Supreme Court, said: ''The true test  *  *  *  is not whether the dangerous place is outside of the way, or whether some small strip of ground not included in the way must be traversed in reaching the danger, but whether there is such a risk of a traveler, using ordinary care, in passing along the street, being thrown or falling into the dangerous place, that the railing is requisite to make the way itself safe and convenient.''

In *Bryant* v. *Town of Randolph* (1892), 133 N. Y. 70, 30 N. E. 657, the court said: ''Negligence on the part of a commissioner of highways may consist as well in the omission to erect barriers in dangerous places in the highway as in leaving a bed of the highway defective.''

In *Hayden* v. *Inhabitants, etc.* (1856), 7 Gray (Mass.) 338, the plaintiff's injury occurred by his falling into a cellar, which was either within the limits of the way, or in such proximity thereto as to render traveling thereon dangerous. The court held that the want of a railing, which was necessary for the safety of travelers, was a defect in the way itself, and that the town was liable.

In *Hall* v. *Incorporated Town of Manson* (1896), 99 Iowa 698, 68 N. W. 922, 34 L. R. A. 207, a recovery was upheld where the plaintiff, a foot passenger, fell, in the dark-

ness, from a walk into an excavation, owing to a misstep. In *Drew* v. *Town of Sutton* (1882), 55 Vt. 586, 45 Am. Rep. 644, a town was held liable where a traveler drove off a steep and unguarded embankment in the dark, the highway being used up to within six inches of the defect.

In Angell, Highways (3d ed.), §262, it is said: "It is, moreover, no justification for a defect or obstruction that it is without the traveled path, if, from its nature or position it is dangerous to such as use the road. \* \* \* And if a road pass over a bank or bridge or along the verge of a precipice, it is the duty of a town properly to guard the edge of the road by walls or railings."

Where a municipality undertakes to improve a street over its entire width, so as to invite public travel thereon, it is its duty to exercise ordinary care to keep the street rea-

6. sonably safe for travel from side to side, and if the owners of adjoining property endanger the safety of travelers upon the way, by the creation of dangerous pitfalls adjoining the same, the municipality, since it may reasonably guard against such a condition, which is really brought about by the relative heights of the two properties, is clearly liable to a traveler who, while in the exercise of due care, falls into the excavation, owing to an accident of travel. See *City of Vincennes* v. *Spees* (1905), 35 Ind. App. 389; *Hall* v. *Incorporated Town of Manson, supra; Zettler* v. *City of Atlanta* (1880), 66 Ga. 195; *Stockwell* v. *Inhabitants, etc.* (1872), 110 Mass. 305; *Damon* v. *City of Boston* (1889), 149 Mass. 157, 21 N. E. 235; *Bassett* v. *City of St. Joseph* (1873), 53 Mo. 290, 14 Am. Rep. 446; Tiedeman, Mun. Corp., §343; 5 Thompson, Negligence (2d ed.), §6055.

The complaint in question discloses on its face that the accident was not brought about by the contributory negligence of plaintiff, while the charge that his injuries

7. were solely caused by the negligence of the defendant, in failing to place a railing or guard along the sidewalk, shows by exclusion that his injury was not caused by

the negligence of any third person, so far as the street was concerned, but was caused by the negligence of appellant. *Indianapolis Union R. Co.* v. *Houlihan* (1901), 157 Ind. 494; *Indianapolis Union R. Co.* v. *Waddington* (1907), 169 Ind. 448, 468.

In the circumstances we are not called on to inquire, so far as the complaint is concerned, as to the precise relation which the projection in the sidewalk had to appellee's fall, for since it is sufficiently shown that neither appellee nor a third person caused the injury, but that it was caused by the negligence of appellant in failing to place a guard or barrier along the edge of the walk, it results that appellant is not in a position to urge that a defect in the sidewalk, if it was one for which the town was responsible, was a cause, rather than one of the conditions surrounding the accident. As was said in *City of Elwood* v. *Addison* (1901), 26 Ind. App. 28, 31: "We fail to see upon what principle a wrongdoer may be permitted to take advantage of his own wrong by saying that the injury resulted from a more immediate cause, when this immediate cause was put into operation by his own immediate act."

The paragraphs of complaint in this case are by no means models of good pleading, but we think that no one can read them without appreciating the fact that a barrier was required to protect travelers from the chance of falling into the low lot, and that it was for the lack of a sufficient protection that appellant fell off the sidewalk and received his injuries.

Although not offered as an objection to the complaint, yet we may here pass upon an insistence that cities and towns are not liable for negligence in the maintenance of public ways. We do not regard this as an open question in this State. *Aiken* v. *City of Columbus* (1906), 167 Ind. 139, 12 L. R. A. (N. S.) 416, and authorities cited.

The next question which we may consider arises upon the overruling of appellant's motion for judgment in its favor

on the answers of the jury to special interroga-
11. tories. We cannot give space to exhibit these findings
in this opinion, although we have carefully read them
in consultation. The question whether a guard is needed
at a particular point to render travel upon the sidewalk
ordinarily safe is usually a question for the jury. 15 Am.
and Eng. Ency. Law (2d ed.), 456.

. The one hundred thirty-eighth and the one hundred
seventy-first answers to interrogatories seem to be in con-
flict in respect to what appellee stumbled over. The
12. latter answer implies that it was upon a projection in
the sidewalk. It is found that he stumbled while step-
ping to the north of the sidewalk to avoid a woman who was
walking in the opposite direction. It is also found that the
sidewalk was dark. It is true that the town had provided
arc lights for the general vicinity, and that these lights and
those from nearby stores and elsewhere must have been an
aid to appellee in discerning the general course of the side-
walk, and yet the street light, at the street intersection to-
ward which appellee was walking, was not giving forth any
light at the time, and it is found that said light had not been
burning properly for some time, so that there not only ex-
isted the danger at the side, but some degree of darkness en-
tered into the problem of whether, in the absence of a bar-
rier, the way as maintained was ordinarily safe for public
travel. In these circumstances, to say nothing of the condi-
tion of the sidewalk itself, we can by no means say that
appellant was not negligent. The finding upon the question
as to whether the officers of the town had notice or
13. knowledge that said street light was out of repair is
simply: "We do not know"—an altogether insuffi-
cient answer. Besides, the question of notice is a mixed ques-
tion of law and fact, concerning which it is not proper di-
rectly to ask the jury. The jury might also have concluded
that it was not ordinarily prudent to maintain such a de-

fect, trusting to artificial light to protect travelers using the sidewalk.

We cannot regard the finding 'that the sidewalk in question had been used for a long time, by day and by night, by a large number of people, without accident, as conclusive. In such a case as this, where the nature of the alleged defect can be definitely appreciated, proof of prior use by the general public without injury, if admissible at all, can at the most only be an evidentiary circumstance bearing on the question of due care. *Bauer* v. *City of Indianapolis* (1884), 99 Ind. 56. See *Aldrich* v. *Inhabitants, etc.* (1854), 1 Gray 510.

We come now to the question whether the findings show as a matter of law that appellee was guilty of contributory negligence. In our opinion they do not. It is true that he was walking within two or three feet of the inner side of the sidewalk, and that he met with his accident by tripping, as he stepped to the north of the sidewalk, as it is found that it was necessary for him to do to permit a woman to pass. It is also true that he knew there was no barrier between the sidewalk and the lot, but we do not think that the answers show that he knew there was anything in the condition of the sidewalk which might cause him to stumble. The answer to interrogatory 163 does not go this far, and we cannot, in construing answers to interrogatories, draw the inference of knowledge from the fact of prior opportunities to acquire it. If he knew of the existence of any unevenness in the edges of the stones or upon their surface, the fact may have been that they were nearer the edge than his general course of travel, or more intensified on the north side, or that he supposed that they were to the north of him. As to his looking, it cannot be said, in view of the answer to interrogatory 118, that as he passed west from the corner of the lot he did not attempt to know or ascertain how near the edge he was walking. If

answers are contradictory they will not influence the general verdict. He may have been looking straight ahead of him without looking at anything in particular, and yet have been approximately advised by the lighted store front, facing the street upon the next lot, as to his course of travel. Making due allowance for the fact that in meeting a person in the darkness he doubtless had but little opportunity for deliberation, we are of opinion, upon the whole, that it may fairly be said, in view of the fact that all persons take some risks, that reasonable minds might differ as to whether his conduct was ordinarily prudent, and therefore the question of negligence should be treated as one of fact, and not as settled by the answers to interrogatories. In the case of *Kelly* v. *Inhabitants, etc.* (1888), 147 Mass. 448, 18 N. E. 217, 9 Am. St. 730, the plaintiff, who was walking along a path after nightfall, left the path because she heard persons approaching on that side of the road, and went along a path on the other side, which led by a dangerous slope. The court said: "A traveler may have his attention momentarily diverted from the defects in the way, even if known to him, and yet be in the exercise of due care." So in *Van Camp* v. *City of Keokuk* (1906), 130 Iowa 716, 107 N. W. 933, where a boy ran by the plaintiff, causing her to step into a hole, the existence of which she knew, the court said that the circumstance might be regarded as such a diversion of her attention as, in the judgment of a jury, might absolve her from the charge of contributory negligence. See, also, *City of Valparaiso* v. *Schwerdt* (1907), 40 Ind. App. 608, for illustrative cases. Assuming that appellee was substantially three feet from the edge as he walked along, as we may do in construing the answers to interrogatories most favorably to appellee, and it might at first thought seem, in view of the fact that the lot was low, that there was some degree of danger in so walking, but that, after all, would be but the practical equivalent of walking in the middle of a sidewalk six feet wide, and

people walking abreast, or passing each other, often walk much nearer to the edge of such sidewalks. In view of appellee's probable want of time for deliberation, as he stepped aside to avoid the woman, it is our conclusion, as indicated, that the answers to interrogatories failed to make out a case of contributory negligence. Appellant was not entitled to judgment on the answers to interrogatories.

We do not think that the evidence makes out the defense of contributory negligence. As we understand appellee's testimony, it was at the time he fell that he was traveling two or three feet from the north edge of the sidewalk; that, just as he stepped aside to pass the woman, he struck his foot against some obstruction and fell. The sidewalk was dark, according to his testimony, and he was very near the woman referred to when he first saw her. He testified on cross-examination that as he was passing her, and looking ahead at no special object, he struck his foot on some obstacle on the sidewalk and pitched headforemost into the lot. When asked whether he turned his head either to the right or left as he "walked down there" (meaning, as we understand it, before he turned out), he answered: "I expect I did." He admitted he knew there was no barrier on the north side of the street, and he answered in the affirmative the next question as to whether he had seen and observed the condition of the "street" in the many times that he had passed over it, but we do not think that this answer, susceptible as it is of referring to the pavement (the condition of which was a pertinent circumstance), was necessarily understood by the jury to be an admission that he knew whatever was shown by other witnesses as to the condition of the surface of the walk. So far as we have observed, he was not examined on this question as to his actual knowledge, so that we do not have his recollection, if any, with reference thereto. But granting that he had knowledge, there is evidence tending to show that the walk had been

worn somewhat within the general course of travel, and in view of the fact that the burden was on appellant to show contributory negligence, that all persons take slight risks, and that appellee's attention was diverted, we cannot say, as a matter of law, that he was guilty of contributory negligence. See *Turner* v. *Buchanan* (1882), 82 Ind. 147, 42 Am. Rep. 485; *Evansville, etc., R. Co.* v. *Crist* (1889), 116 Ind. 446, 2 L. R. A. 450. It was for appellant to show that appellee negligently omitted to take sufficient care for his own safety, and we cannot draw adverse presumptions from the silence of the record as to the care he took. There was evidence sufficient to show appellant's negligence and to support the verdict. There was some evidence to the effect that the sidewalk was dark. The precise degree of darkness, however, is immaterial in connection with the question under consideration, for we should regard the question of negligence in failing to maintain the guard as one for the jury, even if it had been broad daylight. The accidents of travel are within the contingencies which a municipal corporation must consider in determining whether it is reasonably prudent to leave without guard or barrier an excavation adjoining a way. 5 Thompson, Negligence (2d ed.), §6055.

The court did not err in refusing instructions 1, 6, 8, 9, 10, 11, 12, 13, 14 and 15 tendered by appellant. Of these, instruction one was erroneous, because it denied the right of recovery if any want of care or neglect contributed to appellee's injury. A slight want of care might not fall below the standard. *Evansville, etc., R. Co.* v. *Crist, supra; Turner* v. *Buchanan, supra; Lawless* v. *Connecticut River R. Co.* (1883), 136 Mass. 1. Six was sufficiently covered in instructions given. Eight was erroneous because it instructed that it was appellee's duty to use his vision and every reasonable means of observation within his power to observe obstructions or de-

fects in the walk, whereas it may have been so dark that the effort would have been useless. Besides, this instruction in no way describes the obstructions or defects which caused appellee to stumble, and we cannot affirm that knowledge of the existence of a possible slight defect or obstruction, over which appellee fell, made it his duty, as a matter of law, to look down. There was some conflict in the evidence as to the condition of the walk, and there was evidence that the walk was not so rough where it had been worn by travel, so that it might have been inferred from the evidence of some of the witnesses that the walk was ordinarily safe, except perhaps at the point where appellee stepped near the edge, and was consequently out of the beaten path of travel, where the circumstances required him hastily to step aside to avoid the woman whom he met. We cannot say that he was bound to use his powers of observation to avoid the dangers of a new situation, concerning which there may not have been sufficient time to take thought. The refusal to give instruction nine was rendered harmless by the findings of the jury. Instruction ten was covered in its essential features by the court's instruction five. Eleven was obscure, and in some respects invaded the province of the jury. It is also within the condemnation of the cases last cited. Twelve and thirteen were properly refused, because, in instructing that in the circumstances therein set forth appellee "took the risk upon himself," they take no account of the question whether he was injured thereby. The risk, if any, which he incurred, may not have been the proximate cause of his injury. Proximate cause is, in the majority of cases, a question for the jury (*Davis* v. *Mercer Lumber Co.* [1905], 164 Ind. 413; *Chicago, etc., R. Co.* v. *Pritchard* [1907], 168 Ind. 398, 9 L. R. A. [N. S.] 857), and, as the court below properly said to the jury in one of its instructions: "The two essential elements

of contributory negligence are want of ordinary care by the plaintiff and a causal connection between such want of care and the injury complained of.'' Said instructions were also calculated to lead to the inference that appellee could not recover because he was passing along the sidewalk. He may have ''assumed the risk'' of not being able to walk along the sidewalk without stepping off, but his legal rights would be quite different where, owing to some sudden exigency in travel, he stumbled and fell from the sidewalk. *Cannon* v. *Lewis* (1896), 18 Mont. 402, 45 Pac. 572. Instruction fourteen was open to some of the objections pointed out to instruction eight. Concerning the instructions refused, we may also add that it is not error to refuse an instruction unless it ought to be given precisely in the terms prayed. *Knapp* v. *State* (1907), 168 Ind. 153. Instruction fifteen was sufficiently covered by the court's instruction number two.

It is contended that instructions 4, 5, 7, 8, 12, 13, 16, 18 and 20, given by the court, were erroneous. The objections urged to four and five are that the duty of the town in respect to keeping its streets and sidewalks in a reasonably safe condition is stated in absolute terms, and that these instructions are in contradiction of the court's instruction six, wherein the jury was told that a municipal corporation is only bound to use reasonable and ordinary care to keep its sidewalks in ordinarily safe condition for ordinary public travel. If this is error, we may remark that in appellant's instruction ten there occurs the statement that the corporation ''is simply required to keep its streets and sidewalks in a reasonably safe condition for persons traveling in the usual routes by day and night and using ordinary care.'' We do not think, however, in view of the instructions given, that the jury could have been misled. As was pointed out in *Turner* v. *City of Newburgh* (1888), 109 N. Y. 301, 16 N. E. 344, 4 Am. St.

453, the duty of the city in respect to its streets is absolute, and it is bound to exercise reasonable care and diligence to accomplish that end. Apparently the same objection was urged for reversal in *City of Macon* v. *Holcomb* (1903), 205 Ill. 643, 69 N. E. 79, and the court there said: "It is said the third imposed upon the city the absolute duty of keeping its sidewalks in repair, whereas the law simply required it to exercise diligence in that regard. Considering the instructions as a whole, it is not subject to the criticism made; but if it were otherwise, the law is correctly stated in several other instructions given. The most that can be justly said as to either the second or third of plaintiff's instructions is, that standing alone they might have been calculated to mislead the jury to the prejudice of defendant." If instructions four and five were abstractly misleading, however, we should not be disposed to reverse this case, for the low and unguarded lot, for a long time in that condition, was a constant challenge to the municipal authorities to consider whether, in view of the absence of a barrier, the sidewalk, as it actually existed, furnished an ordinarily safe place for public travel. The condition of the sidewalk, as well as that of the adjoining lot, had continued as it was for a long period of time, and we assume that it was the duty of the officers of the city to take notice of the fact that the street light upon the next corner might sometimes not be burning, and therefore, being challenged to consider the problem, there really appears to have been no litigated question of notice in the case, and the question was whether the duty had been discharged of making the sidewalk reasonably safe. What we have said concerning instructions four and five will suffice to dispose of a like objection to instruction twenty. It was not error to give instructions seven and eight. The question whether the sidewalk was unsafe and dangerous without a guard was for the jury, but in the hypothesis stated in instruction seven the court correctly

charged concerning negligence, and instruction eight merely directed the attention of the jury to facts that might be considered in determining the question. The nature of the excavation was sufficiently shown by the evidence. We have already had occasion, in the course of this opinion, to rule on the proposition of law involved in instruction twelve. As to instruction thirteen, we have to say that it was not necessary for the jury to find that the town in fact had notice of the defect. If the town might have obtained notice by the exercise of reasonable diligence, the law charges it with knowledge. *City of Michigan City* v. *Phillips* (1904), 163 Ind. 449. Instructions sixteen and eighteen were correct as far as they went, and instruction twenty was applicable to certain phases of the evidence. In concluding our consideration of the instructions of the court we may say that, considered as a whole, it appears to us that the jury was very fairly instructed.

Two or three minor questions concerning the introduction of evidence remain. Complaint is made that the court permitted a witness to prove that her father and mother carried a lighted lantern in going to her house on the night of the accident. It appears that the question was saved on the introduction of the witness's testimony in chief. On cross-examination, however, after it appeared that the witness's claim of knowledge was based on the fact that the lighted lantern was on her porch when she reached home, the court, on motion, "withdrew from the jury all that this witness said about her father's coming to her house carrying a lighted lantern." On redirect examination, appellee's counsel went into the subject again, but this time without objection. In these circumstances we must hold that the question of the admissibility of the evidence is not presented.

Complaint is made that the court permitted a prior owner of the lot to testify that there had been a billboard in front

of it at some time anterior to the accident. It appears to us that the evidence was harmless. Finally, it is urged that the court erred in permitting a witness to testify to the amount which plaintiff was earning at the time of the injury. The complaint charged that, by reason of plaintiff's injuries, he' was permanently disabled and incapacitated from following his usual vocation. The evidence showed that at the time of his injury, and for some time prior thereto, appellee was in the employ of a piano company; that he was principally engaged in boxing and shipping pianos, but that he did some carpentry work about the plant; that he was earning $12.25 per week, and that his services were worth that much. In our opinion the objection is not well taken. The testimony was relevant, not as direct proof of damages, but as evidence tending to prove the value of appellee's time. *City of Logansport* v. *Justice* (1881), 74 Ind. 378, 39 Am. Rep. 79; *Braithwaite* v. *Hall* (1897), 168 Mass. 38, 46 N. E. 398; *Illinois Steel Co.* v. *Ostrowski* (1902), 194 Ill. 376, 62 N. E. 822.

We find no error. Judgment affirmed.