Wayne L. PERRY, Appellant
(Plaintiff Below),

v.

LEO P. KNOERZER CORPORATION,
Appellee (Defendant Below).

No. 4–784A197.

Court of Appeals of Indiana,
Fourth District.

Dec. 27, 1984.

Rehearing Denied Feb. 5, 1985.

Richard F. Benne, Jason L. Horn, Richard F. Benne, P.C., Munster, for appellant.

Orest S. Szewciw, Donnersberger & Szewciw, Munster, for appellee.

CONOVER, Judge.

Appellant Wayne L. Perry (Perry) sued appellee Leo P. Knoerzer Corporation (Knoerzer) for compensatory and punitive damages arising from improper repairs Knoerzer employees performed on Perry's automobile. The trial judge granted a motion for judgment on the evidence for Knoerzer on the punitive damages claim and refused Perry's tendered jury instructions on punitive damages. The jury found for Perry and awarded $4,700 in compensatory damages.

Perry filed a motion to correct errors on the directed verdict and refusal to instruct on punitive damages, and Knoerzer filed a motion to correct errors for unreasonable damages. The trial judge granted Knoerzer's motion, ordered a new trial on damages, and denied Perry's motions. Perry appeals this denial.

ISSUES

Perry presents two issues for our review which we have restated:

1. Was the evidence at trial sufficient to overcome the motion for judgment on the evidence as to punitive damages?

2. Did the trial judge err in refusing to give Perry's tendered instructions on punitive damages?

Since we reverse on the first issue, we need not discuss the second.

FACTS

Perry purchased a new 1976 Cadillac El Dorado convertible automobile from Knoerzer, a Cadillac dealer. Perry, meticulous in the care of his automobile, washed it two or three times per week and waxed it once or twice each month. Three years later, Perry noticed surface rust on the lower body portion of the vehicle near the rocker moldings. Knoerzer denied liability because the warranty had expired. Perry contacted a representative of General Motors Corporation who agreed to pay one-half the cost of repairs to the vehicle. Perry was to pay the balance. Perry again contacted Knoerzer.

Knoerzer then agreed to repair the vehicle by removing the moldings, eliminating the rust, and refinishing the lower half of the vehicle body, the front of the hood, and the rear of the deck lid, then replacing the moldings. Perry first took the vehicle to Knoerzer for repair in June of 1979. Knoerzer neither removed the moldings to reach the rust underneath, nor removed all the visible rust. In July Perry returned the vehicle to Knoerzer to have the work done properly. Again, Knoerzer failed to remove the moldings. In August, Knoerzer accepted the vehicle and attempted to make the needed repairs a third time. Again, Knoerzer failed to strip the paint and rust and remove the moldings as agreed.

In September, Perry took the vehicle to Knoerzer who promised, as originally agreed, to properly remove the moldings and strip away the rust and paint before repainting. Four days later the vehicle was returned to Perry as being completed, but no work had been performed on the vehicle. Perry delivered it back to Knoerzer in October for the fifth time. This time Knoerzer painted the entire vehicle rather than just the lower body, hood, and rear deck as they had originally agreed, but without removing the old paint, rust and rocker moldings.

Perry returned the vehicle to Knoerzer for the sixth time in March 1980. Knoerzer took the vehicle to another body shop to have the repairs completed. Four weeks later Knoerzer returned it to Perry without any repairs having been made. Finally, in June Perry brought the vehicle to Knoerzer's for the seventh time. When the vehicle was returned to Perry in July of 1980, one year and one month from the time Perry had first taken his auto to Knoerzer for the body work, the tires, lights, and chrome moldings all had paint on them and certain signal lights had been painted over.

Knoerzer finally had removed the rocker moldings to make repairs underneath as agreed, but had not used body clips to re-attach the moldings to the body so as to make such attachment invisible. Instead, Knoerzer had drilled holes through the moldings and body of the car and screws, painfully noticeable, were used to attach the moldings to the body. Also, there were runs and dirt in the paint. Eventually, the paint began to crack, chip, and fall off in chunks because of the excessive amount of paint Knoerzer had sprayed on the vehicle.

## DISCUSSION AND DECISION

 In reviewing a trial court's ruling on a motion for judgment on the evidence, we consider only the evidence and reasonable inferences most favorable to the non-moving party. *Jones v. Gleim*, (1984) Ind., 468 N.E.2d 205, 206; *Johns v. New York Blower Co.*, (1982) Ind.App., 442 N.E.2d 382, 384; *Large v. Gregory*, (1981) Ind. App., 417 N.E.2d 1160, 1163. A judgment on the evidence in favor of the defendant is proper only when there is an absence of evidence or reasonable inferences in favor of the plaintiff upon an issue in question. The evidence must support without conflict only one inference which is in favor of the defendant. *Jones*, 468 N.E.2d at 207; *Palace Bar, Inc. v. Fearnot*, (1978) 269 Ind. 405, 409, 381 N.E.2d 858, 861. If there is any probative evidence or reasonable inferences to be drawn from the evidence sufficient to support the claim, or if there is evidence allowing reasonable people to differ as to the result, judgment on the evidence is improper. *Jones*, 468 N.E.2d at 207.

Much of Knoerzer's brief and Perry's reply brief concern the weight and credibility of the evidence at trial. To the extent they make these arguments, their efforts are futile. On appeal we will neither reweigh the evidence nor judge the credibility of witnesses. *Morrison v. State*, (1984) Ind., 462 N.E.2d 72, 74; *Royer v. Pryor*, (1981) Ind.App., 427 N.E.2d 1112, 1115. As we previously have stated, on appeal from a judgment on the evidence we will consider *only* the evidence and inferences therefrom in a light most favorable to the non-moving party. *Jones, supra,* 468 N.E.2d at 206; *Johns, supra,* 442 N.E.2d at 384; *Large, supra,* 417 N.E.2d at 1163. The facts outlined above reflect that approach. We need now to apply that evidence to Perry's claim.

 The judgment on the evidence here is against Perry's claim for punitive damages. An award for punitive damages must be supported by clear and convincing evidence indicating malice, fraud, gross negligence, or oppressive conduct. Further, the evidence must be inconsistent with a hypothesis of mere negligence, mistake of law or fact, overzealousness, or other noninquitous human failing. *Traveler's Indemnity Co. v. Armstrong*, (1982) Ind., 442 N.E.2d 349, 362; *Whiteco Properties, Inc. v. Thielbar*, (1984) Ind.App., 467 N.E.2d 433, 438; *Orkin Exterminating Co., Inc. v. Traina*, (1984) Ind.App., 461 N.E.2d 693, 698, *trans. pending; Lloyds of London v. Lock*, (1983) Ind.App., 454 N.E.2d 81, 83.

 Here, the evidence most favorable to Perry shows Knoerzer took possession of Perry's vehicle and failed to repair it in the manner to which they had agreed, not once, but seven times. Taken individually, each instance might be consistent with mere negligence. However, when viewed together as a series of related events, a jury reasonably could have found at least gross negligence on the part of Knoerzer, inconsistent with any hypothesis of mere negligence, mistake of law or fact, overzealousness, or other non-iniquitous human failing, warranting the imposition of punitive damages. The trial court erred in removing the punitive damages issue from the jury's consideration.

Reversed and remanded for a new trial.

MILLER, P.J., and YOUNG, J., concur.